IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

TAMARA S. SEVERSON,

        Plaintiff,

v.

Commissioner of Social Security Administration,

               Defendant.

Case No. 3:16-cv-02377-CL

OPINION AND ORDER

JAMES COON
SCOTT SELL
Thomas, Coon, Newton & Frost
820 SW Second Ave, Suite 200
Portland, OR, 97204

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011

KATHRYN A. MILLER
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Of Attorneys for Defendant

1- OPINION AND ORDER

*Opinion and Order*

CLARKE, Magistrate Judge:

Plaintiff Tamara S. Severson ("Severson") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is REVERSED and the case REMANDED for further proceedings.

*Procedural Background*

Severson filed for SSI on November, 29, 2012, alleging disability as of December 23. 2010. Tr. 18. Her application was denied initially and upon reconsideration, and a hearing was held on January 14, 2015, before an Administrative Law Judge ("ALJ"); Severson was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 38-72. On April 10, 2015, ALJ Vadim Mozyrsky issued a decision finding Severson not disabled. Tr. 18-30. Severson requested timely review of the ALJ's decision and, after the Appeals Council denied her request for review, filed a complaint in this Court. Tr. 1-3.

*Factual Background*

Born in 1958, Severson was 52 years old on the disability onset date. Tr. 200. She graduated high school and completed office specialist training classes at the community college level. Tr. 169. She previously worked as a courier and performed general office work for a small business. Tr. 169. She alleges disability due to injuries to her spine, neck, and back, as well as "severe nerve pain." Tr. 168.

On Severson's disability onset date, December 23, 2010, a vehicle backed into her parked car while she sat in the driver's seat. Tr. 254. Severson reported moderate and constant neck pain

2- OPINION AND ORDER

as a result of the accident. Tr. 254. Severson took time off her job as a courier, and upon her return, found she was unable to complete her normal duties due to pain and stress. Tr. 42.

MRIs performed on January 12, 2011, and June 24, 2011, revealed "severe right neural foraminal narrowing," as well as "moderate left neural foraminal narrowing" at the C5-6 vertebra and moderate degenerative changes at the C5-6 vertebra. Tr. 454. On October 7, 2011, Dr. Darrell Brett, M.D., performed an "anterior cervical discectomy, partial corpectomy, foraminotomy, and neural decompression" and a C5-6 "interbody" fusion on Severson's neck. Tr. 459.

Severson returned to Dr. Brett for a one-year checkup, where she complained of "residual neck and interscapular pain with over-exertion or sustained or awkward neck positions." Tr. 288. Dr. Brett noted Severson's neck movement was reduced, but she had "no objective neurologic deficit, with preserved strength [and] sensation." *Id.* He noted that Tramadol should be used sparingly, and conservative measures like "ice, deep heat, ultrasound, massage, and gentle mobilization" would help curtail her symptoms, which were expected to arise chronically with over-exertion. *Id.* Functionally, Dr. Brett opined Severson could work in a "light-duty capacity. She should not lift or carry more than 24 [pounds], perform any repetitive or heavy exertion with the upper extremities, or maintain any awkward or stationary neck positions that aggravate her pain. These will be permanent occupational and recreational restrictions." *Id.* The ALJ gave great weight to Dr. Brett's assessment.

*Disability Analysis*

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining

3- OPINION AND ORDER

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4- OPINION AND ORDER

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found Severson had not engaged in substantial gainful activity since she filed her application, November 29, 2012. Tr. 20.

At step two, the ALJ determined Severson had the following severe impairments: degenerative disc disease, osteoarthritis, and carpal tunnel syndrome. Tr. 20. The ALJ

5- OPINION AND ORDER

determined that Severson's osteopenia of the lumbar spine and hips, and adjustment disorder with depression and anxiety, did not rise to the level of severe. Tr. 20-21.

At step three, the ALJ found that Severson's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 23. Because Severson did not establish disability at step three, the ALJ continued to evaluate how Severson's impairments affected her ability to work during the relevant period. The ALJ found Severson had the residual functional capacity ("RFC") to perform light work except she:

> is limited to occasional reaching overhead with both of her upper extremities. She can frequently handle and finger with her right upper extremity. She can frequently climb ladders and scaffolds. She can frequently crawl.

Tr. 23.

At step four, the ALJ found that Severson was able to perform her past relevant work as a courier. Tr. 28.

Accordingly, the ALJ concluded Severson was not disabled under the Act. Tr. 30.

*Standard of Review*

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" is "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009) (*quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (*citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment

6- OPINION AND ORDER

for that of the Commissioner. *Id. (citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*

## Discussion

Severson alleges the ALJ erred by improperly evaluating her RFC. The Regulations require the ALJ to evaluate a claimant's ability to work using the RFC. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c); SSR 96–8p, 1996 WL 374184, at *1. The Ninth Circuit has stated the Regulations require "only that the ALJ discuss how the evidence supports the [RFC] and explain how the ALJ resolved material inconsistencies or ambiguities in the evidence;" the "ALJ is not required . . . to engage in a function-by-function analysis under SSR 96–8p." *Mason v. Comm'r*, 379 Fed. Appx. 638, 639 (9th Cir. 2010); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

### A. Severson's Neck Restriction

Dr. Brett opined Severson could perform light exertional work but could not "maintain any awkward or stationary neck positions that aggravate her pain." Tr. 27, 288. The ALJ gave great weight to the doctor's neck restriction, but he did not include any corresponding workplace limitations in Severson's RFC. The ALJ, however, was required to either include workplace restrictions in the RFC relating to Dr. Brett's neck restriction, or explain why that evidence was ambiguous or inconsistent with other evidence of record. *See Mason*, 379 F.3d at 639. This amounts to harmful error, as it is unclear if Severson's past relevant work as a courier involved awkward or stationary neck positions. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050,

1055 (9th Cir. 2006) (an error is harmless when it is inconsequential to the ultimate non-disability decision).

The Commissioner argues that Dr. Brett's neck restriction was addressed at the administrative hearing. Severson's attorney asked the VE what jobs would be eliminated by a neck restriction similar to the one opined by Dr. Brett. Tr. 69. The VE responded, "I have - - I have no way of answering that. I'm not - - first of all, I'm not certain what 'awkward' means." Tr. 69. Severson's attorney then asked if certain jobs required an employee to keep their head in a certain position for extended periods of time. Tr. 69. The VE responded that assembly-type jobs would keep an employee's head in a fixed position, but the employee could still turn their head from side to side or up and down. Tr. 70.

The VE's testimony, however, introduced *more* ambiguity rather than offering clarity, because it is unclear what "awkward" means in the context of neck positions. Yet the ALJ refrained from questioning Severson to determine the extent to which the neck restriction reflected her impairments and what positions she considered "awkward." The ALJ could have questioned Severson about specific neck positions that caused her pain, and whether her job as a courier implicated those positions. Therefore, the ALJ erred by giving great weight to Dr. Brett's neck restriction without providing a corresponding limitation in Severson's RFC.

### B. Severson's Restricted Use of Upper Extremities

Dr. Brett opined Severson could not "perform any repetitive or heavy exertion with the upper extremities." Tr. 288. The ALJ gave the restriction great weight. Tr. 27. Severson's RFC, however, includes only a limitation related to "occasional reaching overhead with both of her upper extremities." Tr. 23. Dr. Brett's fully credited opinion did not limit Severson to merely occasional overhead reaching, but limited any repetitive movement with the upper extremities. Tr. 288. Even if the ALJ's evaluation of Severson's RFC with respect to overhead reaching is

valid as far as it goes, it is incomplete because the ALJ failed to limit the movements of her upper extremities in any other direction. Under her current RFC, Severson could be expected to constantly reach in any direction other than overhead, as the SSA defines "reaching" as, "extending the hands and arms in any direction." SSR 85-15. This plainly conflicts with Dr. Brett's fully credited opinion, and the ALJ erred by failing to incorporate the doctor's restriction into the RFC.

*Remand*

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, " 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.' " *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989); *Smolen*, 80 F.3d at 1292.

On this record, remanding the case for further proceedings is necessary. The ALJ erred by failing to incorporate the limitations endorsed by Dr. Brett relating to Severson's neck and upper extremities. On remand, the ALJ should either accept or reject the doctor's limitations that Severson should not "maintain any awkward or stationary neck positions" and "perform any repetitive or heavy exertion with the upper extremities." Tr. 288. If necessary, the ALJ should adjust his hypothetical questions to the VE and reevaluate Severson's RFC to determine if she is capable of performing her past relevant work as a courier.

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Severson's application for SSI is REVERSED and this case REMANDED for further proceedings.

DATED this 26 day of March, 2018.

Mark Clarke
United States Magistrate Judge